[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-15627
Non-Argument Calendar
_____

D.C. Docket No. 4:14-cr-10015-JEM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS CORDOVA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 10, 2015)

Before TJOFLAT, WILSON and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

Carlos Cordova appeals his sentence of 44 months of imprisonment for the revocation of his supervised release, 18 U.S.C. § 3583(e), and for his conviction for reentering the United States illegally, 8 U.S.C. § 1326(a), (b)(1). Cordova argues that his sentence is substantively unreasonable. We affirm.

In 2009, Cordova pleaded guilty to entering the United States illegally after being deported in 2005. *Id.* Cordova was deported after completing his sentence for leaving the scene of an accident involving a death. Cordova drove his vehicle in a canal, swam away, and allowed his passenger to drown without seeking assistance or notifying the police. His criminal past also included convictions in 2008 of driving with a revoked license, in 2000 for unlawful driving as an habitual traffic offender, and in 1998 for driving with a suspended license and obstruction of justice. Based on that record, the district court sentenced Cordova to 18 months of imprisonment and 3 years of supervised release.

In 2012, the district court revoked Cordova's supervised release for driving without a license and sentenced him to 13 months of imprisonment and 23 months of supervised release. Immigration officials deported Cordova, but he reentered the United States illegally and was arrested by Florida officers for a traffic violation. The government petitioned to revoke Cordova's supervised release a second time.

In the meantime, Cordova pleaded guilty to reentering the United States illegally. *Id.* Cordova's presentence investigation report recounted his criminal

2

history and numerous traffic offenses. With an adjusted offense level of 12, United States Sentencing Guidelines Manual § 2L1.2(a), (b)(1)(D) (Nov. 2014), and a criminal history of IV, Cordova faced an advisory guideline range of 21 to 27 months of imprisonment.

The district court consolidated Cordova's reentry proceeding and the petition for revocation of his supervised release. Cordova admitted that he had reentered the country illegally and committed traffic violations, and the district court revoked his supervised release. Based on Cordova's acceptance of responsibility, the district court reduced the offense level for his reentry offense from 12 to 10, which resulted in a revised advisory guideline range of 15 to 21 months.

With respect to Cordova's second violation of supervised release, the district court considered the parties' arguments and the information in the petition for revocation, and determined that a sentence within the advisory guideline range of 18 to 24 months was appropriate. *See* U.S.S.G. §§ 7B1.1(a)(2), 7B1.4(a). Because the maximum statutory sentence that Cordova faced was 36 months, and he had served 13 months for his first violation, the district court sentenced him to 23 months. For Cordova's reentry offense, the district court considered the parties' arguments, the presentence investigation report, and the statutory sentencing factors and sentenced Cordova to 21 months. The district court ordered that Cordova's sentences run consecutively.

The district court did not abuse its discretion by sentencing Cordova to 23 months for the second violation of his supervised release and to a consecutive term of 21 months for reentering the United States illegally. The district court determined that Cordova's "criminal history . . . underrepresented" the "multiple occasions[ that he had] come into the country illegally" and his "repetitive traffic violations," one of which evidenced a "callous disregard" for human life. Cordova's "indifference to our rules and laws" made him, as stated by the district court, "a menace to the community" that warranted sentences to the maximum remaining penalty for violating his supervised release and to the high end of the revised sentencing range for his illegal reentry. Those sentences, the district court reasonably determined, were required to address Cordova's "lackadaisical attitude" about supervised release, *see* 18 U.S.C. §§ 3583(c), 3553(a), and to provide adequate punishment, to protect the public, and to deter Cordova from continuing to reenter this country illegally, *see id.* § 3553(a). Based on those factors, the district court also reasonably decided to order that Cordova's sentences run consecutively. *Id.* § 3584(b). Although Cordova entered the country ostensibly to see his wife and children, the district court determined that Cordova's criminal history warranted a lengthy sentence. Cordova's sentence of 44 months, which is well below the maximum statutory penalty of 10 years for his illegal reentry, is reasonable. *See United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008).

4

We **AFFIRM** Cordova's sentence.